IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
11/17/2021
U.S. DISTRICT COURT
Northern District of WV

TIMBERCAP GP, LLC and TCP BRIGHT, LLC,

    Plaintiffs,

v.

LANDMARK FORESTRY LLC,

    Defendant.

Civil Action No.  2:21-CV-24 (Kleeh)

## COMPLAINT

AND NOW COME the Plaintiffs, TimberCap GP, LLC and TCP Bright, LLC, by and through their attorneys, and file the following and allege and demand damages from the Defendant Landmark Forestry, LLC.

## PARTIES

1.  Plaintiff, TimberCap Partners GP, LLC ("TimberCap") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 95 Avenue of Two Rivers, Rumson, New Jersey, 07760.

2.  Plaintiff, TCP Bright, LLC, ("TCP Bright"), is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 95 Avenue of Two Rivers, Rumson, New Jersey, 07760.

3.  Defendant, Landmark Forestry, LLC ("LMF") is a Limited Liability Company, organized and existing under the laws of the State of West Virginia with a principal place of business at 691 Stalnaker Addition, Horner, West Virginia, 26372.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The Defendant is located in this District and a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## FACTUAL BACKGROUND

6. TimberCap is a company organized to invest in the timber industry through the acquisition of timberland (also known as forest land), which contains sawtimber. Sawtimber refers to trees that are large enough and of high enough quality to be sawn into various types of lumber.

7. LMF is a forest consulting firm that "serves a broad array of clients ranging from non-industrial private landowners to many corporate clients along the east coast."

8. As a forest consulting firm, LMF provides timberland investors with acquisition inventories, timber appraisals, timberland management, and forest management plans.

9. LMF purports to be highly experienced in performing due diligence on behalf of its clients, including performing acquisition inventories and timber appraisals, taking into account "the quality of the timber, the degree of difficulty in removing the timber, and the assessment of timber markets in the subject area."

10. In addition to its acquisition services, LMF also purports to provide timberland management services pursuant to which LMF manages an investor's timberland holdings for growth and income.

11. Upon information and belief, LMF currently manages approximately 370,000 acres in West Virginia, Virginia, Ohio and Kentucky.

12. On or around March 22, 2017, TimberCap retained LMF as its exclusive forest consulting firm.

13. As the exclusive forest consulting firm for TimberCap, LMF agreed to (1) generate leads, (2) conduct preliminary due diligence on leads, (3) determine whether such leads are worth pursuing for acquisition purposes, (4) conduct formal due diligence prior to acquisition, and (5) provide land management, timber sales administration, including managing the logging of sawtimber, and land sales services post acquisition.

14. The exclusive consulting agreement between TimberCap and LMF is reflected in a March 22, 2017 email, a copy of which is attached hereto as **Exhibit A.**

15. As consideration for its consulting services prior to the closing of an acquisition, TimberCap and LMF agreed that LMF would receive 2.0% of the purchase price for each closed timberland acquisition, in a combination of cash and an interest in the profits of the acquisition.

16. At all relevant times prior to September 2017 one of LMF's largest clients, The Forestland Group ("TFG"), owned at least twelve tracts of timberland in West Virginia and Kentucky known as the "Bright Properties."

17. Since at least 1999, LMF acted as the forest consulting firm for TFG with respect to the Bright Properties.

18. LMF represented to TimberCap that it had intimate knowledge of the value of the Bright Properties based on its management of the properties since at least 1999.

19. Starting in April 2017, LMF began to provide TimberCap with information regarding a potential acquisition of the Bright Properties from LMF's long-term client, TFG.

20. Among such information, LMF provided TimberCap with specific information regarding the inventory of total sawtimber less the inventory of sawtimber located in inoperable areas of the Bright Properties.

21. The analysis of the Bright Properties that was provided by LMF to TimberCap is attached hereto as **Exhibit B.**

22. LMF thereafter advised TimberCap that it should purchase the Bright Properties from TFG.

23. LMF represented to TimberCap that if TimberCap acquired the Bright Properties for the proposed purchase price of $2,750,000.00, then TimberCap could realize a profit of $3,065,692.00.

24. TimberCap's expected profit was based on LMF's valuation of the sawtimber and the underlying land, which LMF valued at $3,744,155 and $2,071,537, respectively, for a total Bright Properties valuation of $5,815,692.

25. A copy of TimberCap's economic arrangement with LMF, prepared by TimberCap and based on LMF's sawtimber and land valuations, is attached hereto as **Exhibit C**. LMF's agreement to the economic arrangement is attached hereto as **Exhibit D**.

26. LMF further represented to TimberCap that the volume of sawtimber set forth in its due diligence analysis was conservative by at least 10%.

27. Based on LMF's representations and advice, TimberCap agreed to purchase the Bright Properties from TFG.

28. On or about September 29, 2017, TCP Bright, a subsidiary of TimberCap, purchased the Bright Properties from one of TFG's investment funds for the total purchase price of $2,750,000.00.

29. As compensation for its consulting services prior to the acquisition, LMF received a 2% interest in the profits generated by TCP Bright.

30. After closing of the Bright Properties acquisition, LMF became the exclusive forest consulting firm for TCP Bright, in addition to TimberCap, and commenced its post-acquisition services, including land management, timber sales administration, including managing the logging of sawtimber, and land sales services.

31. LMF embarked on various efforts to market and sell each Bright Properties tract, including the sawtimber and the underlying land.

32. For each successful sale, LMF was to receive a percentage of the sales price according to various metrics.

33. In the ensuing months and years, LMF was completely unable to broker any sales, except with respect to just *one* tract.

34. It now seems clear in hindsight that LMF's sales efforts were unsuccessful, in part, because LMF's acquisition inventories were drastically overstated. In other words, third-party purchasers were not interested in purchasing tracts for the values proposed by LMF because LMF's acquisition inventories were fatally flawed — facts which were not known to TimberCap/TCP Bright but should have been known to LMF prior to the acquisition.

35. Over time, LMF became increasingly disinterested in soliciting or brokering potential sales of the tracts and put forth little to no effort on that front, despite its commitment to provide timber sales administration and land sales services as TCP Bright's forest consulting firm.

36. When the sale of tracts by LMF proved to be a complete dead-end, LMF and TCP Bright made the decision to contract with third-party loggers. Through the use of third-party loggers, LMF and TCP Bright shifted the investment plan for the Bright Properties. Now, instead of selling

standing timber and the underlying land (as expected), LMF and TCP Bright were compelled to actually log and merchandise the sawtimber itself in order to achieve the expected profit.

37. The attendant cost to TCP Bright was significantly higher than if LMF had actually sold the tracts outright. In the same vein, the work required by LMF increased because LMF was now required, as part of its timber sales administration services, to monitor and facilitate the logging effort.

38. LMF resisted the additional work required as a result of the new logging effort and did not adequately perform the required services.

39. TCP Bright relied on LMF for these services, and LMF's failure to perform was highly detrimental to TCP Bright.

40. In June 2018, LMF provided TCP Bright with revised inventories for sawtimber on the Bright Properties.

41. The 2018 revised inventories were alarming because they represented for the first time that the Bright Properties had significantly less inventory than originally identified by LMF.

42. Upon receiving the revised inventories, TimberCap and TCP Bright discovered that LMF's pre-acquisition due diligence did not account for two tracts that had already been logged by TFG and that LMF, as TFG's forest consultant at the time, had managed the logging operations for TFG.

43. LMF admitted its error but made no effort to mitigate the damage to TimberCap and TCP Bright.

44. Indeed, LMF downplayed the significance of the error, advising TCP Bright that the acquisition would nonetheless generate the expected profit if TCP Bright agreed to sell all of the

smaller sawtimber, which TimberCap had promised its investors, prior to the acquisition of the Bright Properties, it would not do.

45. As logging commenced and continued in the spring of 2019 through 2020, TCP Bright was alerted to the fact that the Bright Properties tracts were generating *significantly less* sawtimber than the inventory volumes provided by LMF both pre-acquisition and in the 2018 revised inventory.

46. Similar errors, incorrect inventories and misrepresentations were thereafter found with respect to other tracts, and this process of discovery continues to this day.

47. The full extent of LMF's deficient pre-acquisition due diligence and misrepresentations regarding inventories is not yet known, but as logging continues on the various tracts, it becomes increasingly clear that the Bright Properties were worth significantly less than the appraisals provided by LMF.

48. Rather than attempt to make it right, LMF completely abandoned the Bright Properties, TCP Bright and TimberCap. Without notice, LMF ceased to provide any forest consulting services as of December 2020.

49. LMF's actions and inactions have caused TimberCap and TCP Bright to incur damages in an amount to be proven at trial.

## COUNT I
## BREACH OF CONTRACT
### TimberCap GP, LLC v. Landmark Forestry, LLC

50. TimberCap incorporates herein by reference thereto each and every of the preceding paragraphs of this Complaint as if the same were more fully set forth herein.

51. Taken together the conversations, emails, and subsequent actions on behalf of TimberCap and LMF establish a legally valid and enforceable agreement between TimberCap and LMF.

52. LMF's pre-acquisition inventories were drastically overstated and contained misrepresentations regarding the quantity of the timber and the degree of difficulty in removing the timber.

53. LMF's pre-acquisition inventories failed to account for timber that had already been logged.

54. LMF breached its obligations by failing to accurately identify, assess and provide diligence on timber investment opportunities and by recommending the Bright Properties as an investment for TimberCap based on these flawed valuations.

55. As a direct and proximate result of LMF's breach, TimberCap suffered significant damages by, among other things, purchasing the Bright Properties for a price that will produce an investment return well below what was originally anticipated.

WHEREFORE, TimberCap GP, LLC, requests judgment in its favor and against Landmark Forestry, LLC in an amount to be proven at trial, in excess of $75,000, plus past and continuing interest, attorneys' fees and costs, disgorgement of fees and such other relief as the Court deems appropriate.

## COUNT II
### BREACH OF CONTRACT
### TCP Bright, LLC v. Landmark Forestry, LLC

56. TCP Bright incorporates herein by reference thereto each and every of the preceding paragraphs of this Complaint as if the same were more fully set forth herein.

57. Taken together the conversations, emails, and subsequent actions on behalf of TCP Bright and LMF establish a legally valid and enforceable agreement between TCP Bright and LMF.

58. LMF was contractually required to provide post-acquisition land management services, including brokering sales of all or portions of the acquired timberland and managing, monitoring and securing the property and managing logging of sawtimber.

59. LMF only sold one tract of land from the Bright Properties.

60. LMF breached its obligations by failing to sell the Bright Properties, by failing to take accountability for its errors and omissions in relation to the Bright Properties transactions, and by refusing to provide the property management work in connection with the logging on the Bright Properties.

61. As a direct and proximate result of LMF's breach, TCP Bright suffered significant damages by among other things, purchasing the Bright Properties for a price that will produce an investment return well below what was originally anticipated.

WHEREFORE, TCP Bright, LLC, requests judgment in its favor and against Landmark Forestry, LLC in an amount to be proven at trial, in excess of $75,000, plus past and continuing interest, attorneys' fees and costs, disgorgement of fees and such other relief as the Court deems appropriate.

## COUNT III
### UNJUST ENRICHMENT/QUANTUM MERUIT
### TimberCap GP, LLC and TCP Bright, LLC v. Landmark Forestry

62. TimberCap and TCP Bright incorporate herein by reference thereto each and every of the preceding paragraphs of this Complaint as if the same were more fully set forth herein.

63. In the alternative, TimberCap and TCP Bright plead that LMF obtained significant sums of money from TimberCap and TCP Bright.

64. It would be unconscionable and inequitable for LMF to retain those sums in exchange for the incomplete and inaccurate work done on behalf of TimberCap and TCP Bright.

65. LMF will be unjustly enriched if it is allowed to retain the sums paid by Timbercap and TCP Bright.

WHEREFORE, TimberCap GP, LLC and TCP Bright, LLC request judgment in their favor and against Landmark Forestry, LLC in an amount to be proven at trial, in excess of $75,000, plus past and continuing interest, attorneys' fees and costs, disgorgement of fees and such other relief as the Court deems appropriate.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### TimberCap GP, LLC and TCP Bright, LLC v. Landmark Forestry, LLC

66. TimberCap and TCP Bright incorporate herein by reference thereto each and every of the preceding paragraphs of this Complaint as if the same were more fully set forth herein.

67. As a forest consultant, LMF owed a duty to TimberCap and TCP Bright to provide truthful and accurate information regarding the Bright Properties.

68. LMF breached the duties owed to TimberCap and TCP Bright by making misrepresentations concerning material facts with regard to the Bright Properties, and by recklessly performing its functions with regard thereto.

69. LMF failed to make a reasonable investigation of the truth of the subjects that LMF misrepresented to TimberCap and TCP Bright.

70. TimberCap and TCP Bright reasonably relied upon LMF's misrepresentations.

71. Reliance on LMF's misrepresentations caused TimberCap and TCP Bright to suffer damages as set forth above.

WHEREFORE, TimberCap GP, LLC and TCP Bright, LLC request judgment in their favor and against Landmark Forestry, LLC in an amount to be proven at trial, in excess of $75,000, plus past and continuing interest, attorneys' fees and costs, disgorgement of fees and such other relief as the Court deems appropriate.

BERNSTEIN-BURKLEY, P.C.

By: */s/ Trisha R. Hudkins*
Kirk B. Burkley, Esquire, WV ID #11767
John J. Richardson, Esquire WV ID #13140
Trisha R. Hudkins, Esquire, WV ID #12667
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Phone: (412) 456-8100
Fax:    (412) 456-8135
Email: thudkins@bernsteinlaw.com
*Attorneys for Plaintiff*